## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER MICHAEL KAISER, : Civil No. 1:24-CV-2209
:
    Plaintiff, :
:
    v. :
: (Chief Magistrate Judge Bloom)
FRANK BISIGNANO, :
Commissioner of Social Security,[1] :
:
    Defendant. :

## MEMORANDUM OPINION

### I. Introduction

On October 5, 2021, Christopher Kaiser filed an application for supplemental security income under Title XVI of the Social Security Act. A hearing was held before an Administrative Law Judge ("ALJ"), who found that Kaiser was not disabled since October 5, 2021, the date of his application.

Kaiser now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we agree

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

and conclude that the ALJ's decision is not supported by substantial evidence.    Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On October 5, 2021, Kaiser applied for supplemental security income, alleging disability due to depression, lower back problems, bilateral hand/wrist/arm problems, COPD, hypertension, sciatic nerve issues, and numbness in his hands.  (Tr. 51). Kaiser was 49 years old on his alleged onset date of disability, January 1, 2020, had a limited education, and had no past relevant work. (Tr. 26, 51).

The medical record in this case is scant and primarily contains evidence of Kaiser's physical impairments, including lower back pain and COPD, for which he treated intermittently at the emergency department. (Tr. 360-77, 391-94, 427, 431, 449-50).    Kaiser also underwent an internal medicine examination with Dr. Ahmed Kneifati in October of 2022 as part of his disability application.  (Tr. 468-79).  However, the record contains no mental health treatment notes during the relevant time.

2

The state agency mental health consultants, Dr. Dawn Long, Psy.D., and Dr. Jamie King, Ph.D., reviewed the record and opined that there was insufficient evidence in the record to assess Kaiser's mental health impairments of depressive, bipolar and related disorders. (Tr. 54, 63). Dr. Long specifically noted that Kaiser had a diagnosis of depression from a prior filing, as well as a notation of a depressed mood. (Tr. 54). Thus, Dr. Long opined that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations resulting from mental health impairments." (*Id.*). On reconsideration, Dr. King similarly found that there was insufficient evidence "to fully evaluate the claimant's mental health[.]" (Tr. 63). Dr. King noted the prior diagnosis of depression, as well as statements from Kaiser's caseworker indicating he lived in a shelter, needed reminders for personal care, had problems with task completion and concentration, and had a low stress tolerance. (*Id.*).

It was against the backdrop of this evidence that the ALJ conducted a hearing on May 13, 2024, during which Kaiser and a vocational expert testified. (Tr. 32-49). Kaiser appeared at this hearing *pro se*, and the

ALJ advised him that he had a right to retain representation. (Tr. 36).
Following the hearing, on July 17, 2024, the ALJ issued a decision
denying Kaiser's application for benefits. (Tr. 17-31). At Step 1 of the of
the sequential analysis that governs Social Security cases, the ALJ
concluded that Kaiser did not engage in substantial gainful activity since
his application date, October 5, 2021. (Tr. 22). At Step 2, the ALJ found
that Kaiser suffered from the following severe impairments: degenerative
disc disease of the lumbar spine, asthma, hypertension, and depression.
(*Id.*). At Step 3, the ALJ concluded that none of Kaiser's severe
impairments met or equaled the severity of a listed impairment under
the Commissioner's regulations. (Tr. 22-24). The ALJ found that Kaiser
had mild to moderate limitations in three of the four broad areas of
mental functioning. (*Id.*).

Between Steps 3 and 4, the ALJ concluded that Kaiser:

[H]a[d] the residual functional capacity to perform light work
as defined in 20 CFR 416.967(b) except the claimant can
occasionally climb ladders, ropes or scaffolds. He can
occasionally balance and occasionally stoop. The claimant can
tolerate frequent exposure to unprotected heights, and he can
frequently operate hazardous machinery. The claimant can
tolerate frequent exposure to atmospheric conditions and
vibrations. He can understand, remember or carry out simple

4

instructions. The claimant can deal with occasional changes in a routine work setting. He can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. The claimant can make judgments on simple, work-related decisions.

(Tr. 24).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Kaiser's reported symptoms. (Tr. 24-26). With respect to the medical opinion evidence regarding Kaiser's mental health, the ALJ did not discuss the state agency consulting opinions that found that there was insufficient evidence in the record to adequately assess Kaiser's functioning with respect to his mental health impairments. (Tr. 54, 63). Instead, it appears that the ALJ found Kaiser's depression to be a severe impairment and accounted for some mental health functioning limitations in the RFC based on either his own lay interpretation of the evidence or the lack of mental health evidence available.

The ALJ also considered Kaiser's symptoms, but ultimately found that the statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical

evidence. (Tr. 24-25). Kaiser testified that he suffered from depression and memory issues. (Tr. 43). He further reported that he had issues sleeping due to his life circumstances, *i.e.*, that he was homeless. (Tr. 44). The ALJ found Kaiser's statements were not entirely consistent with the medical records. (Tr. 25-26). The ALJ did not discuss Kaiser's depression and related symptoms but considered a statement from Kaiser's caseworker, who reported that Kaiser had some limitations with attention and concentration. (Tr. 25).

Having made these findings, at Step 4 the ALJ found that Kaiser had no past relevant work but found at Step 5 that Kaiser could perform jobs in the national economy, such as a product sorter; inspector, hand packager; and a press tender. (Tr. 26-27). Accordingly, the ALJ found that Kaiser had not met the stringent standard prescribed for disability benefits and denied his claim. (Tr. 27).

After Kaiser's application and his request for review by the Appeals Council were denied, his caseworker submitted a mental status evaluation to the Appeals Council performed by Dr. Kristen Tollefson, M.D., in October of 2024. (Tr. 3-7). Dr. Tollefson noted that Kaiser was

6

referred by his caseworker for an evaluation of depression, anxiety, and anger. (Tr. 3). She further noted that Kaiser had been homeless and unemployed for seven years. (*Id.*). Kaiser reported feeling depressed and on edge, decreased concentration, excessive worry, and intrusive thoughts. (Tr. 3-4). A mental status examination revealed an irritable, anxious, and depressed mood; guarded engagement; poor judgment regarding his medical and cognitive treatment; and somewhat impaired memory. (Tr. 5-6). Dr. Tollefson's clinical impressions were that Kaiser's symptoms were suggestive of anxiety disorder indicating difficulty with cognitive functioning. (Tr. 6). She opined that Kaiser would benefit from a more comprehensive psychiatric assessment and therapy. (*Id.*). The Appeals Council declined to reopen Kaiser's case. (Tr. 1).

This appeal followed. On appeal, Kaiser argues that the ALJ erred by failing to fully develop the record, given that Kaiser was proceeding *pro se* at the administrative level. After consideration, we conclude that the ALJ failed to fully develop the record, and as such, the ALJ's opinion is not supported by substantial evidence. Accordingly, we will remand this matter to the Commissioner for further consideration.

7

## III.  Discussion

### A. Substantial Evidence Review – the Role of This Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decisionmaker are supported by substantial evidence in the record.  *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).  However, where there has been an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether Kaiser is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014

WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot reweigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must

discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether Kaiser: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine Kaiser's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all Kaiser's medically determinable impairments, including any

12

non-severe impairments identified by the ALJ at step two of the analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with his or her RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that

13

a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of

independent judgment based upon all the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Kaiser contends that the ALJ failed in his duty to adequately develop the record regarding Kaiser's impairments, particularly because Kaiser appeared at the hearing *pro se*. Significantly, Kaiser points out that the ALJ found Kaiser's depression to be a severe impairment and assessed non-exertional limitations in the RFC despite the lack of mental

15

health treatment records and with no assessment regarding Kaiser's functional abilities. After consideration, we agree with Kaiser and conclude that the ALJ failed to develop the record in Kaiser's case, and as such, his decision is not supported by substantial evidence.

"ALJs have a duty to develop a full and fair record in social security cases[.]" *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This duty is heightened when a claimant appears *pro se*. In those circumstances, "the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2006) (internal quotations marks and citations omitted). This is particularly so where the claimant has alleged a mental health impairment. *See Plumber v. Apfel*, 1486 F.3d 422, 434 (3d Cir. 1999). "When an ALJ 'has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination,' remand is appropriate." *Rosa v. Colvin*, 956 F. Supp. 2d 617, 622 (E.D. Pa. 2013) (citations omitted).

After consideration, we conclude that the ALJ failed to adequately develop the record with respect to Kaiser's mental health impairments.[2] The ALJ found Kaiser's depression to be a severe impairment and assessed non-exertional limitations in Kaiser's RFC in determining that Kaiser can perform a range of light work. But it is entirely unclear and unexplained how the ALJ made those determinations. The disability determinations at the initial and reconsideration levels both noted a severe impairment of depression but found that there was insufficient evidence in the record to assess Kaiser's functional limitations from his mental health impairments. (Tr. 54, 63). The ALJ did not discuss those determinations or the lack of mental health treatment evidence. Nor did he discuss Kaiser's testimony regarding his depressive symptoms. Thus, we are confronted with a decision that denied Kaiser's application based, in part, on a finding that Kaiser could perform a range of light work with certain nonexertional limitations, but that is entirely unclear as to how the ALJ arrived at those limitations. We cannot conclude that the

---

[2] Because we are remanding this matter due to the ALJ's failure to develop the record as to Kaiser's mental health impairments, we decline to address the plaintiff's remaining arguments.

17

decision, particularly with respect to Kaiser's mental health impairments and limitations, is accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge


Date: July 18, 2025